FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 JAN 27 PM 2: 13
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| VERDELL CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 95-PT-3113-S |
| | ) | |
| JEFFERSON COUNTY COMMITTEE FOR ECONOMIC OPPORTUNITY, | ) ) ) | ENTERED |
| | ) | |
| Defendant. | ) | JAN 27 1998 |

## Memorandum Opinion

This cause comes on to be heard on a motion for reconsideration filed by the plaintiff Verdell Craig ("Craig") on November 24, 1997, in which the plaintiff argues that due to a conspiracy between the Jefferson County Committee for Economic Opportunity ("JCCEO") and the Birmingham office of the EEOC, documents that potentially demonstrate the existence of a genuine issue of material fact regarding the time at which the plaintiff's EEOC charge was filed were withheld from her. JCCEO responds that the evidence provided by the plaintiff is fabricated by her and that therefore no basis exists upon which to grant the motion for reconsideration.

In <u>Mays v. United States Postal Service</u>, 122 F.3d 43, 46 (11th Cir. 1997), the Eleventh Circuit Court of Appeals explained that:

> [a] post-judgment motion may be treated as made pursuant to either Fed. R. Civ. P. 59 or 60—regardless of how the motion is styled by the movant—depending on the type of relief sought. Here, the relief sought was the setting aside of the grant of summary judgment, denial of the defendant's motion for summary judgment, and trial on the merits of the case.

158

>Thus, it is properly characterized as a Rule 59(e) motion to alter or amend the judgment, rather than a Rule 60 motion for relief from the judgment.

The crux of the plaintiff's argument for reconsideration is that previously unconsidered evidence demonstrates that she filed a charge of discrimination on March 12, 1992. In response to the filing, she alleges, she was told by Warren Bullock, the then District Director of the Birmingham District Office of the EEOC, that she had to exhaust her remedies before the JCCEO before her charge could be investigated or amended. After her termination was "finalized" on June 20, 1992, the plaintiff avers, she amended her charge of discrimination on December 2, 1992, relying on Bullock's advice. She attempts to support her claims with two recently discovered letters by Bullock and a recently discovered EEOC charge dated March 12, 1992, all of which she claims were absent from her EEOC file due to a conspiracy between the Birmingham District Office of the EEOC and the JCCEO. The JCCEO claims that the letters were absent from her file because they never existed in her file and that the letters, the charge and other documents demonstrating contact with the EEOC, show signs of fabrication by either the plaintiff or her attorney.

In support of its position, the JCCEO presents affidavits by Bullock, who allegedly authored the documents; Ms. Geraldine W. Collins, who the plaintiff alleges told her that documents from her EEOC file had not been released to her; Mr. Gerald S. Kiel, the present District Director of the Birmingham District Office of the EEOC, who the plaintiff alleges released the previously undisclosed information to her; and Richard A. Roper, a forensic examiner. In his affidavit, Bullock denies having ever produced the alleged letters to Craig. In her affidavit, Ms. Collins denies ever having spoken to Craig about the existence of unrevealed contents in her EEOC file. In his affidavit, Mr. Kiel denies the existence of the documents Craig avers come via a release of her by file by Mr. Kiel. Finally, in his affidavit, Mr. Roper performs a detailed analysis of the newly-introduced documents, with the conclusion that they are forgeries. The plaintiff responds that the documents cannot be forgeries because more documents existed in the New Orleans EEOC file (913 pages), which the defendant requested, than in the Birmingham EEOC file (581 pages), which the plaintiff requested. The plaintiff contests Roper's analysis of the signatures, contending that they could have been authorized signatures created by a name signature stamper.

The court will refer this matter to a Magistrate Judge to determine if a hearing is necessary, to conduct such a hearing if deemed necessary and to make a report and recommendation to the court.

This 23rd day of January 1998.

*Robert B. Propst*
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE