FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 DEC 16 AM 10: 14

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| VERDELL CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| v. | ) | |
| | ) | CV-95-PT-3113-S |
| JEFFERSON COUNTY COMMITTEE FOR | ) | |
| ECONOMIC OPPORTUNITY | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED

DEC 16 1998

## MEMORANDUM OPINION

This cause comes to be heard on Plaintiff's Motion for Reconsideration filed on November 24, 1997 and Plaintiff's Objection to the Magistrate Judge's Report and Recommendation filed on November 9, 1998. The following are notes resulting from the court's listening to tapes of the hearing before Judge Putnam.

**Dorothy Holmes**

Organizer of "The Advocate" – a community activist agency created to aid those being oppressed by those in positions of governmental power. Her goal was to "help" Craig with her claim against JCCEO.

Claims to have accompanied Craig to the EEOC in March of 1992 and April of 1992, and claims to have logged her time in a notebook of some sort which was destroyed when her house burned down recently. Does not know for sure who they spoke with at EEOC, but believes it was probably Mr. McGhee. Claims that Craig signed a sign-in sheet in March of 1992.

Created an affidavit in 1995 stating that she had accompanied Craig to the EEOC office in March of 1992. Cannot say exactly why the affidavit was created at that time. Says both that it was suggested by an attorney and that she did it without someone else's suggestion because she had helped five or six other people who had experienced trouble in establishing that they had visited the EEOC on a given date. Very unclear on the circumstances surrounding the creation of the affidavit. Also unclear why this is "newly discovered."

178

### Mr. Files

EEOC Enforcement Manager since 1994. Supervisor of Investigations before that. McGhee forwarded Craig's file to him in the Spring or Summer of 1996. The file was later forwarded out of the Birmingham office to the New Orleans office of the EEOC – this, apparently, is unusual, but does not appear to have been suspicious given the circumstances. Has never seen a case investigated in one office and then transferred as this case was.

Reviewed the file both before and after it went to the New Orleans office. Upon looking at the file the second time, he found that several documents were missing. The missing documents included a letter of determination, a recommended letter of determination and an investigative memorandum. Stated that a file should not be separated in this manner. States later that letters of determination, if filed, should be disclosed when the file is requested by the claimant. Investigative memos should not be disclosed.

Claims that he attended a meeting in the Summer or Fall of 1995 with Ernest Pew (an EEOC investigator, now deceased) and Mr. Warren Bullock (who was, at that time, District Director of the EEOC offices in this area) in which the Craig file was discussed. Files claims that Bullock told them that he was sending the file to New Orleans to be "stroked." Files believes that "stroke" meant "to sign off as recommended." Files claims the meeting lasted no longer than 15 minutes. Bullock claims that he does not recall having such a meeting with Files and Pew.

Claims that timeliness is usually investigated as an initial issue. If a charge is not filed in a timely manner, no investigation should take place. EEOC document regarding Craig's December visit to EEOC office states that her charge is not timely. This does not square with the fact that the charge was investigated (Later, Bullock explains that the timeliness issue was readdressed and an investigation was undertaken for the purposes of giving the claimant the benefit of the doubt on the law at the administrative level).

### Jill Lolley-Vincent

Supervisor Trial Attorney at EEOC and Custodian of Records for Craig's file. First saw the file in 1994/95.

Page 3

States that the jurisdictional/timeliness question was discussed by EEOC officials numerous times. Bullock made initial determination of timeliness. The determination was later reconsidered.

Acknowledges that Craig did not receive the same number of pages from her file that JCCEO received. Unclear exactly how or why this occurred. Claims it may have something to do with transcripts from state proceedings that were added to the file during the time of disclosure. Craig asserts that the transcripts do not account for all of the missing pages.

Testified that the file contains a January 1993 memo stating that Craig's file had nothing in it prior to December 2, 1992.

Acknowledges that the recommendation of determination (a 1993 document created by someone named Offerman) was not in Craig's file and that the EEOC cannot locate the document.

The "newly discovered" documents presented by Craig (two letters allegedly written by Bullock referring to Craig's alleged visit to the EEOC in March of 1992, a handwritten EEOC charge dated March 12, 1992, and a typed EEOC charge that allegedly was transcribed from the handwritten charge and created in March of 1992) are not in the file.

Explains that the document number on the typed EEOC charge presented by Craig does not match with the date it was allegedly created. The document number on the charge is a fiscal year 1993 number, given only to charges filed in 1993. Such a number would not be on a document created in March of 1992. Notes also that the handwritten charge bears an EEOC stamp – charges do not, generally, get stamped.

Also testifies as to two documents in which Craig, in her December visit to the EEOC, checked boxes stating that the visit was her first to the EEOC and that she had never filed a charge in the past. This does not square with the existence of the handwritten charge of March 1992. Later states, however, that "first visit" was later checked on another intake form.

### Mr. Warren Bullock

District Director of the Birmingham Office of the EEOC from March 1989 until December of 1996.

States that a letter dated March 24, 1992 from himself to Craig was not written by him and was not created with his instruction. States that he would never send such a letter and neither would any other District Director he has ever met. The letter apparently acknowledges her visit to the EEOC and gives her both a home and work number to call if she needs assistance or has questions. He acknowledges that Craig should have gotten notification from the EEOC if and when her charge was accepted, but not the type of letter presented here. He also states that he did not write the March 18, 1992 letter to Gayle Cunningham (Board Member of JCCEO) presented by Craig.

Claims that Craig's file/case was transferred to New Orleans as a result of numerous calls from both Craig and others indicating/suggesting that he could not be considered impartial as a result of his (Bullock's) acquaintances with Mayor Arrington, Mayor Langford and Gayle Cunningham. Bullock says he did not characterize the situation as one which involved a true conflict of interests, but that he decided to have the case transferred to avoid any appearance of impropriety. He admits to having a 'professional relationship" with all three people. Claims that he found out that Langford was on the board of the JCCEO in October of 1994.

Claims that he first examined the file after October 18, 1994. Bullock contends that, at that time, there was a "no cause" determination in the file signed by Mr. Pew. No cause determination was signed by Bullock on October 18, 1994, but was reconsidered in January of 1995 at Bullock's instruction. Acknowledges that he wrote several memos to Pew in August of 1993 regarding the jurisdictional/timeliness question that he understood existed – asked Pew to investigate. States that he never actually looked at the file during this time – he had no reason to do so.

The letter of determination signed by Pew that Bullock claims was in the file is not there now. Bullock states that if the letter was not issued, then it could be removed from the file, as it was not the position of the EEOC. This would explain why someone would have removed such a letter.

Bullock states that he did not tell anyone at the EEOC that he was sending the file to New Orleans to get "stroked." The cover letter sent with the file to New Orleans tells the office that an investigation was done in the case, but that they could review it and come to their own conclusions regarding Craig's charge. Bullock states that he supported a finding of cause for a retaliation claim and no-cause for the sexual

harassment claim filed by Craig, but that New Orleans found no-cause on both claims.

Acknowledges having a signature stamp that can only be used legally with his permission and states that it is normally used only for administrative paperwork.

When deciding whether Craig's charge, for administrative purposes, was filed in a timely manner, Bullock chose to utilize the 5th Circuit's view on deciding when discharge is complete. Under the 5th Circuit's interpretation, discharge, for the purposes of the 180 day filing period, occurs when a final determination has been made by the board of an entity, not when a person is initially terminated from her position. The 11th Circuit has adopted the view that the 180 day period should begin when the person is terminated from employment and stops work. Craig was officially discharged by the board in July of 1992, but actually stopped working long before that. Thus, her December filing would be timely if the official discharge date were utilized, but would not be if the date of termination/work stoppage was used. Bullock, who had authority over offices in both the 5th and 11th Circuits, claims that he chose the more liberal 5th Circuit standard for administrative purposes in order to give the claimant a chance to bring her claim and have the matter determined in court if necessary.

### Mr. McGhee

Enforcement Supervisor at EEOC. Assigned the Craig case by Bullock sometime in 1995. His role was to continue the investigation as necessary and render a recommendation. He prepared a letter of recommendation that he does not recall "signing." The letter should have been placed with the file according to his understanding of the filing procedures at the EEOC. States that he briefly discussed the transfer of the case with Bullock and that Bullock told him that the case was going to be transferred to New Orleans.

### Verdell Craig

Claims that she first visited the EEOC in October of 1991 and was told that she could not file her charge at that time. She contends that she returned in March of 1992 with Dorothy Holmes. She claims that she did not sign in during the March 1992 and April 1992 visits because she was never told to do so. She was allegedly told during her March 1992 visit that she had 180 days after termination to file her charge and that she had to exhaust her administrative remedies in order to file a charge. However, she now claims to

have submitted a handwritten charge created by the EEOC during her visit, despite being told that she had to wait to do so.

Craig claims that when she returned to the EEOC in December of 1992 she actually did sign in, as requested, and aided in the creation of some paperwork. She contends that she was told that March 1992 would be considered her original filing date. She claims that documents in her EEOC file were "whited out" and altered to read 12/2/92 instead of 3/2/92. She has presented no evidence to confirm this contention. She also claims to have marked "return visit" on the form given to her during the December visit, but, again, claims that the document has been altered.

Craig also claims that Mr. Jerome Rose, an attorney for the EEOC, gave her the handwritten charge dated March 12, 1992. Rose denies the claim.

### Mr. Roper

Handwriting expert. Testified that the documents presented as the letters of Bullock were, apparently, the result of "cut and paste" work. The alignment of the documents was not correct and the signatures appeared to match too well. Admitted that a stamp could create such a match. Stated that he could not be sure beyond any doubt because he was, of course, unable to examine the originals, as only copies were presented and the originals were, supposedly lost or destroyed. Nonetheless, he does believe that the documents presented by Craig as "newly discovered" were manipulated.

### Katrina Mu'Min

Craig's attorney from 1993-95? Claims that she remembers seeing a handwritten charge form dated March 1992 when she reviewed the file in 1993. Not very specific or believable testimony.

### Geraldine Collins

Craig claims that Collins gave her documents that were prejudicial to JCCEO's defense. Her supervisor is Gayle Cunningham. Collins denies having seen or communicated with Craig at any time regarding such documents.

Page 7

**Court's Conclusions**

The court concludes that the findings of fact presented in Judge Putnam's Report and Recommendation are supported by the evidence presented during the hearing. Craig's testimony regarding the matter is unclear, contradictory and incredible. The "newly discovered" documents presented by Craig appear to have been created fraudulently and are somewhat inconsistent with Craig's view. Additionally, although Craig alleges some sort of conspiracy on the part of Warren Bullock and others at the EEOC to prevent her claim against JCCEO from succeeding, she has presented no evidence indicating that anyone did anything to hinder her claim. On the contrary, it appears that her claim was given too much consideration and attention by the EEOC and that it should have been denied from the beginning as untimely. The fact that Bullock transferred the case to New Orleans with instructions to review the investigation as necessary makes it appear very unlikely that he wanted to unnecessarily or unfairly squelch the claim. If he had wanted to do so, he certainly had the authority to "kill" the claim himself.

The court will overrule the objections to the Magistrate Judge's Report and Recommendation and will deny the plaintiff's Motion for Reconsideration.

This ___ day of December, 1998.

ROBERT B. PROPST
UNITED STATES DISTRICT JUDGE